IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
REGINALD LEE ROGERS, SR.,            )
                                     )
               Plaintiff,            )
                                     )
         v.                          )    1:07CV141
                                     )
DAVIDSON COUNTY DETENTION CENTER     )
OF LEXINGTON, NORTH CAROLINA,        )
MAJOR SHOAF, LIEUTENANT BAILEY,      )
and LIEUTENANT MOTE,                 )
                                     )
               Defendants.           )
```

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the Court on two motions: 1) Defendants' Motion for Summary Judgment (Docket Entry 40); and 2) Defendants' Motion to Strike (Docket Entry 48). In addition, Plaintiff has filed two documents seeking the Court's assistance in subpoenaing witnesses to testify about his claims. (Docket Entries 51, 52.) For the reasons that follow, Defendant's Motion for Summary Judgment should be granted and, thus, Defendants' Motion to Strike and Plaintiff's subpoena requests will be denied as moot.

BACKGROUND

This case began on February 9, 2007, when Plaintiff filed a form Complaint pursuant to 42 U.S.C. § 1983. (Docket Entry 2.) In the caption of the Complaint, Plaintiff identified the defendant as "Davidson County Detention Center of Lexington North Carolina." (Id. at 1.)[1] In section IV of the form Complaint entitled

---

[1] Plaintiff often uses only capital letters. (See Docket Entry 2.) In such instances, for ease of reading, this Memorandum Opinion relies on standard capitalization conventions when quoting Plaintiff.

"Parties," Plaintiff listed four "Defendant(s)": 1) "Major Shoaf," whom he further described as a "Major of the Davidson County Sheriff Dept."; 2) "Lieutenant Bailey of Davidson County Detention Ctr."; 3) Lieutenant Mote of Davidson County Detention Ctr."; and 4) "Robert S. Taylor, Assistant District Attorney - Superior Court." (Id. at 2.) Taylor was dismissed as a defendant by prior Order. (See Docket Entries 34, 44.)[2]

Section V of the Complaint bears the title "Statement of Case." (Docket Entry 2 at 3.) The instructions thereto directed Plaintiff to set out the facts of his case "by describing how each defendant . . . is personally involved in depriving [him] of [his] rights. Include relevant times, dates, and places." (Id.) The directions further state: "Number and set forth each separate claim in a separate paragraph." (Id.) Plaintiff did not set out separately-numbered paragraphs; indeed, he did not use paragraphs at all, but instead filled all of the pre-printed lines on that section of the form (spanning parts of two pages) and additional space under the heading for section VI entitled "Relief" with a

---

[2] By separate Order, Plaintiff also was advised that, although his instant Complaint "makes allegations against persons not named as defendants in the case and/or unidentified persons[,] . . . only the four persons named in Section IV of the [C]omplaint are defendants in the case . . . ." (Docket Entry 3 at 1.) Plaintiff thereafter filed separate actions against additional individuals connected to the Davidson County Detention Center. See Rogers v. Davidson County Detention Ctr. Capt. Hartsell, 1:07CV324 (M.D.N.C.) (compl. filed Apr. 13, 2007); Rogers v. Davidson County Sheriff David S. Grice, 1:07CV327 (M.D.N.C.) (compl. filed Apr. 13, 2007); Rogers v. Davidson County Detention Ctr. Sgt. Milam, 1:07CV328 (M.D.N.C.) (compl. filed Apr. 13, 2007). Plaintiff also instituted additional actions against Defendants Bailey and Shoaf. See Rogers v. Davidson County Detention Ctr. Lt. Bailey, 1:07CV323 (M.D.N.C.) (compl. filed Apr. 13, 2007); Rogers v. Davidson County Detention Ctr. Maj. Shoaf, 1:07CV326 (M.D.N.C.) (compl. filed Apr. 13, 2007).

single continuous narrative featuring only occasional punctuation. (Id. at 3-4.)

Plaintiff began his "Statement of Claim" by alleging that "[o]n November 20, 2007 [he] was falsely imprisoned by Davidson County Detention Center . . . ." (Id. at 3.) Plaintiff thereafter described events that allegedly occurred in the Davidson County Detention Center while he awaited trial for rape, as well as alleged events related to his actual prosecution on said charge(s). (Id.) In relevant part, Plaintiff's Complaint sets forth the following allegations regarding Defendants Shoaf, Bailey, and Mote:

1) "I was taken to solitary confinement because my white wife . . . came to visit me by the Major Shoaf and Lieutenant Bailey" (id.);

2) "I was mace [sic] and drugged blinded and seared by the mace liquid all the way to solitary confinement by Lieutenant Mote this incident is on video in April 25, 2006" (id.); and

3) "My little brother died on January 6, 2007, [sic] was taken to his funeral by racist Major Shoaf refusal. [sic] To place outside of this facility and transported to another facility to await trial March 5, 2007 for fear of my life here due to the exposure of this lawsuit to the Detention Center in Lexington North Carolina to be transported at least on house arrest on my father . . . until trial March 5, 2006" (id. at 4).

As noted above, Plaintiff filed the instant Complaint on February 9, 2007, so his allegation therein of "false imprison[ment]" on November 20, 2007, is in error. It appears,

-3-

based on a published decision of the North Carolina Court of Appeals, that Plaintiff intended to refer to his arrest on November 20, 2005. Specifically, in State v. Rogers, 194 N.C. App. 131, 669 S.E.2d 77 (2008), pet. for discretionary review denied, ___ N.C. ___, 676 S.E.2d 305 (2009), said court stated:

> [Plaintiff and his wife] separated in 2004. [Plaintiff] moved out of the house but [his wife] retained custody of their two children. On 19 November 2005 [Plaintiff] forcibly entered the home [his wife] shared with the two children and forced [his wife] to have sex with him. [Plaintiff's wife] reported the incident to the police and [Plaintiff] was arrested on 20 November 2005.

Rogers, 194 N.C. App. at 132, 669 S.E.2d at 79 (emphasis added).[3]

Section III of the form Complaint bears the title "Exhaustion of Inmate Administrative Remedies." (Docket Entry 2 at 2.) Question A in that section asks: "Did you present the facts of each claim relating to your complaint to the Inmate Grievance Commission or any other available administrative remedy procedure?" (Id.) Plaintiff responded by checking the space for "Yes." (Id.) As to the further inquiry, "When did you file your grievance?", Plaintiff wrote: "August 15, 2006 by written grievance to the S.B.I. Director Pendergraft, Attorney General Roy Cooper, Ronald Bratton Sr." (Id.) As to the question, "What was your grievance?", Plaintiff stated: "About the racial discrimination, prejudice, cruel and unusual punishment at Davidson County

---

[3] Plaintiff "was tried before a jury from 14 to 17 August 2007 in Superior Court, Davidson County. On 17 August 2007 the jury returned guilty verdicts for felonious breaking and entering, habitual misdemeanor assault, second degree rape and second degree sexual offense." Rogers, 194 N.C. App. at 136, 669 S.E.2d at 81.

Detention Center [sic] abused by officers with mace and drugged [sic] to the hole in pain [sic] these tactics." (Id.)

The form Complaint further inquired as follows: "Did you appeal any adverse decision to the highest level possible in the administrative procedure?" (Id.) Again, Plaintiff answered "Yes." (Id.) In response to the further question as to "when was the decision and what was the result?" Plaintiff replied: "In 2006 I sent written notice to Governor Michael F. Easley and Attorney General Roy Cooper, S.B.I. Governor said he was not in authority, Roy Cooper of S.B.I. response attached." (Id.) Plaintiff attached two documents to his form Complaint (neither of which came from Attorney General Cooper): 1) a letter dated October 17, 2006, from the North Carolina State Bar to Plaintiff acknowledging receipt of information Plaintiff sent to the Bar regarding certain pending matters (id. at 6);[4] and 2) a "Davidson County Jail Inmate Grievance Form" dated January 13, 2007, in which Plaintiff complains about "Lt. Bailey tauting [sic]" Plaintiff following an

---

[4] The letter does not identify the person(s) (presumably attorneys) involved in the matters as to which Plaintiff had provided information to the Bar. As noted above, Plaintiff has made claims that a prosecutor involved in his underlying criminal case violated his rights. (See Docket Entries 34, 44.) In addition, according to the decision from the North Carolina Court of Appeals affirming Plaintiff's convictions in the underlying criminal case, Plaintiff "delayed his trial for months as he fired three different appointed attorneys and a standby counsel." Rogers, 194 N.C. App. at 140, 669 S.E.2d at 83. "From 21 April 2006 through 16 July 2007, [Plaintiff] wrote a number of letters to the Davidson County Clerk of Court . . ., some of which included complaints regarding the services of [one of his appointed attorneys]." Rogers, 194 N.C. App. at 134, 669 S.E.2d at 80. That attorney moved to withdraw from representing Plaintiff, in part, because Plaintiff "had filed a complaint with the State Bar regarding [said attorney's] representation." Id.

-5-

incident that allegedly occurred while Plaintiff was working on a "road crew" (id. at 7).[5]

On April 9, 2008, Defendants filed a Motion to Compel seeking an order directing Plaintiff to comply with Defendants' discovery requests. (Docket Entry 27.) The Court granted that motion. (Docket Entries 30, 31.) Defendants thereafter filed a Notice asserting that Plaintiff failed to comply with the Court's Order on the Motion to Compel. (Docket Entry 37.)

On October 1, 2008, Defendants moved for summary judgment, including on the ground that Plaintiff failed to comply with the Court's discovery-related order and to exhaust administrative remedies. (Docket Entry 40 at 1.) On October 9, 2008, Plaintiff filed a document lacking a proper caption in which he stated: "I oppose the defendants [sic] motion to dismiss through summary judgment under Section 1983 against my civil rights as a citizen of the United States of America . . . ." (Docket Entry 43 at 1.) Nowhere in said document did Plaintiff respond to Defendants' non-exhaustion argument. (See id. at 1-8.)

---

[5] The entirety of the grievance is as follows:

> Why? [sic] is Lt. Bailey tauting [sic] me? Especially in an emergency situation. An inmate . . . had a seizure and I was asked by the captain of the road crew to help him with a towel. When Lt. Bailey arrived and asked whose towel was it that assisted the fallen inmate in the seizure? [sic] I quickly answered that it was mine, and Lt. Bailey said I better get you another towel and did with laughter during a horrific moment "saying he didn't want me writing a grievance on him."

(Docket Entry 2 at 7.)

-6-

On April 7, 2009, Plaintiff filed a document captioned as "Written Objections III and Opposition Response Federal Civil Rules." (Docket Entry 47 at 1.) In said document, Plaintiff repeated some of the same arguments he made in his filing dated October 9, 2008, and referenced his submission of "civil summons for witnesses" regarding three prisoners and an employee of the Davidson County Sheriff's Office whom he wished to subpoena for trial. (Id. at 1-2.) Nowhere in said document did Plaintiff address Defendants' non-exhaustion argument. (See id.) Defendants thereafter moved to strike the foregoing filing by Plaintiff as an untimely and procedurally improper response to their summary judgment motion. (Docket Entry 48.)

On February 5 and 9, 2010, Plaintiff filed documents in which he appears to seek the Court's assistance in subpoenaing several witnesses to provide testimony about his case. (Docket Entries 51, 52.) Defendants filed a response opposing those requests. (Docket Entry 53.)

## DISCUSSION

"In response to an ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary, Congress in 1996 passed the Prison Litigation Reform Act ["PLRA"]." Anderson v. XYZ Correctional Health Servs., Inc., 407 F.3d 674, 676 (4th Cir. 2005). "Of importance to this case is the PLRA's exhaustion-of-remedies requirement." Id. "[T]he PLRA's exhaustion requirement is mandatory." Id. at 677. Moreover, the United States Court of Appeals for the Fourth Circuit

-7-

has recognized that, in some cases, "a complaint may clearly show that an inmate has not exhausted his administrative remedies." Id. at 682.[6] This case represents just such a circumstance.

As detailed above, Plaintiff apparently alleges that officials of the Davidson County Sheriff's Office violated his rights under the United States Constitution while he was in pretrial detention by placing him in solitary confinement one or more times and by spraying him with mace once. However, as documented above, Plaintiff's Complaint clearly shows that he did not exhaust his administrative remedies as to these matters. Further, again as set out above, Plaintiff's Complaint establishes that the facility where these alleged events occurred had an internal administrative grievance process, that Plaintiff was familiar with that process, and that Plaintiff used that process during his pretrial detention.

Under these circumstances, this Court should follow the approach that it and other district courts in the Fourth Circuit have taken in prior such situations and dismiss Plaintiff's instant action. See Terrell v. Wilson, No. 7:09CV130, 2009 WL 1076295, at *1-2 (W.D. Va. Apr. 21, 2009) (unpublished); Lawson v. Berg, C/A No. 9:07-907-JFA-GCK, 2008 WL 4200328, at *1-3 (D.S.C. Sept. 2, 2008) (unpublished); Moore v. Scotland County Jail, No. 1:05CV527,

---

[6] The PLRA's exhaustion requirement applies to "prisoner[s] confined in any jail, prison, or other correctional facility," 42 U.S.C. § 1997e(a), and, for purposes of this requirement, "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program," 42 U.S.C. § 1997e(h) (emphasis added).

-8-

2006 WL 2168940, at *1-2 (M.D.N.C. June 28, 2006) (unpublished) (Dixon, M.J.), recommendation adopted, No. 1:05CV527 (M.D.N.C. July 31, 2006) (unpublished) (Beaty, J.).

Plaintiff's allegation that he exhausted his administrative remedies by sending letters to North Carolina state officials, including the then-Governor and Attorney General, does not require a different result. Plaintiff has filed an action alleging that officials with the Davidson County Sheriff's Office violated his rights by placing him in solitary confinement and by spraying him with mace. Prior to launching such litigation in this Court, the PLRA requires Plaintiff to challenge those officials' alleged misconduct via the internal administrative process at his place of confinement, not by writing letters to state officials. Moreover, Plaintiff has not alleged that he lacked knowledge of the grievance system at his place of confinement (nor, given Plaintiff's attachment to his Complaint of a Davidson County Jail grievance form he submitted regarding another matter, could Plaintiff plausibly so allege). Finally, Plaintiff does not allege any inquiry he had about the grievance system at issue went unanswered.

As another district court in the Fourth Circuit recently observed when confronted with analogous circumstances: "Accordingly, the court cannot conclude that the grievance system was unavailable to Plaintiff on the facts of this case. Plaintiff was advised of and knew about the existence of the system, and he could have asked for any further information he required." Graham v. County of Gloucester, 668 F. Supp. 2d 734, 740 (E.D. Va. 2009).

-9-

Even if Plaintiff failed to appreciate his entire range of options in the Davidson County Detention Center grievance system, that fact would not excuse his noncompliance with the PLRA's exhaustion requirement. See id. at 741 (citing authority from the Third, Sixth, Seventh, Eighth, and Tenth Circuits in holding that "a prisoner's claim that the grievance system was unavailable to him because he lacked full knowledge of the specifics of the grievance process does not excuse or waive a failure to exhaust administrative remedies"). Any approach that permitted prisoners to bypass administrative review and move directly into federal court simply by alleging lack of knowledge "would be undoubtedly routinely invoked." Id. at 740. In such a context, federal courts would have to evaluate the legitimacy of these regular claims of ignorance from prisoners seeking to avoid exhaustion, "a time-consuming task . . . fraught with uncertainty." Id. To construe the PLRA's exhaustion requirement in a fashion that produced such results would conflict with both the spirit and letter of the PLRA, which "was intended to 'reduce the quantity and improve the quality of prisoner suits'" and which contains no provision authorizing a court "'to excuse compliance with the exhaustion requirement, whether on grounds of futility, inadequacy or any other basis.'" Id. at 739-40 (quoting Porter v. Nussle, 534 U.S. 516, 524 (2002), and Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000), respectively).[7]

---

[7] Given that Plaintiff knew something about the grievance process and has failed to allege that he tried, but was blocked from learning more, the few cases that recognize some "lack of knowledge" exception to the PLRA's exhaustion
(continued...)

Although Plaintiff's case could have been dismissed sua sponte without notice to him (given the facial obviousness of his failure to exhaust administrative remedies), see Anderson, 407 F.3d at 682 (authorizing sua sponte dismissal of cases without affording prisoner further opportunity to be heard "where failure to exhaust is apparent from the face of the complaint"), the Court did not do so in this case. Instead, this issue has come before the Court upon Defendants' summary judgment motion after Plaintiff has had a full and fair opportunity to respond. In the face of that privilege, Plaintiff has defaulted by failing to file a response that addresses the non-exhaustion issue. Plaintiff's failure to address this argument constitutes a concession under the Court's Local Rules. See Kinetic Concepts, Inc. v. ConvaTec Inc., No. 1:08CV918, 2010 WL 1667285, at *6-8 (M.D.N.C. Apr. 23, 2010) (unpublished) (analyzing this Court's Local Rules 7.3(f), 7.2(a), and 7.3(k) and discussing authority supporting proposition that failure to respond to argument amounts to concession).

As a result, because, as to the non-exhaustion issue, Plaintiff "fail[ed] to file a response within the time required by [this Court's Local Rules], the motion [from Defendants] will be considered and decided as an uncontested motion, and ordinarily

---

[7](...continued)
requirement would not have application to this case even if the Court found those authorities persuasive in general. See Graham, 668 F. Supp.2d at 741 n.3 (noting that decisions from Eleventh Circuit, Southern District of New York, and Northern District of Illinois "are not all precisely and factually on point with the case at bar wherein Plaintiff had knowledge of the existence of the grievance system, and no evidence suggests that Defendants frustrated any effort by Plaintiff to learn more about the system").

will be granted without further notice." M.D.N.C. R. 7.3(k). Plaintiff's status as a pro se litigant does not entitle him to relief from this rule. "As the United States Supreme Court observed in McNeil v. United States, 508 U.S. 106, 113 (1993), '[the Supreme Court] ha[s] never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.' Accordingly, pro se litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines." Hewitt v. Hutchins, 309 F. Supp. 2d 743, 748-49 (M.D.N.C. 2004) (internal parallel citations and second set of internal quotation marks omitted).[8]

CONCLUSION

Plaintiff's Complaint establishes that he failed to exhaust his administrative remedies as to the claim(s) he seeks to litigate in this federal action. The PLRA therefore precludes this case from proceeding at this time. Further, Plaintiff failed to respond to the portion of Defendants' summary judgment motion regarding this issue. Under this Court's Local Rules, Plaintiff thus has conceded this matter and Defendants' motion should be granted. Given that this case should be dismissed, Defendants' motion to strike Plaintiff's untimely supplemental response in opposition to

---

[8] Because Plaintiff's failure to exhaust his administrative remedies is clear, the undersigned United States Magistrate Judge declines to address Defendants' other arguments regarding summary judgment. Engaging in such analysis would defeat the PLRA's purpose of conserving federal judicial resources by requiring the filtering of claims of this sort through an administrative process prior to consideration of merits-related issues in federal court.

Defendants' summary judgment motion and Plaintiff's requests for court-assistance in subpoenaing witnesses are moot. Accordingly,

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 40) be **GRANTED** to the extent it relies on Plaintiff's failure to exhaust administrative remedies and that Plaintiff's instant action be dismissed without prejudice to re-filing if and when Plaintiff exhausts his administrative remedies as to the claims in question.

**IT IS FURTHER ORDERED** that, in light of the foregoing Recommendation, Defendants' Motion to Strike (Docket Entry 48) and Plaintiff's requests for the Court's assistance in subpoenaing witnesses to testify about his claims (Docket Entries 51, 52) are all **DENIED AS MOOT.**

                                              /s/ L. Patrick Auld
                                                  **L. Patrick Auld**
                                    **United States Magistrate Judge**

June 9, 2010